# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BEUGRE S. NEHAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 12-cv-05274 ) |
| | ) Judge Andrea R. Wood |
| LOCAL UNION NO. 1- BAKERY, CONFECTIONERY, TOBACCO WORKERS AND GRAIN MILLERS INTERNATIONAL UNION, AFL-CIO-CLC and ROGER JONES, | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Beugre Nehan worked in the shipping and receiving department of Tootsie Roll Industries ("Tootsie Roll"). When a supervisor ordered him to relinquish to another employee a forklift he had been using, thereby relegating him to use of equipment that he thought put more strain on his previously injured back, Nehan asked his union steward, Roger Jones, to file a grievance under the collective bargaining agreement. Jones did not file a grievance, however, and Nehan alleges that this inaction was due to discriminatory animus against Nehan based on his race, national origin, and disability. Now before the Court are cross-motions for summary judgment on Nehan's discrimination claims against Jones and Local Union No. 1 - Bakery, Confectionary, Tobacco Workers and Grain Millers International Union, AFL-CIO-CLC ("Union," and together with Jones, "Defendants"). For the reasons detailed below, Defendants' summary judgment motion (Dkt. No. 129) is denied as to Nehan's claim for national origin discrimination but otherwise granted, and Nehan's summary judgment motion (Dkt. No. 128) is denied.

**BACKGROUND**

At the time of the incidents at issue, Nehan was employed by Tootsie Roll as a "Hi-Lo Operator" in the company's shipping and receiving department. (Defs.' Resp. to Pl.'s Stmt. of Undisputed Facts ("D. Resp.") ¶ 8, Dkt. No. 181.) Nehan is black and a native of the Republic of Côte d'Ivoire in West Africa. (*Id.* ¶ 6.) He was a member of the Union and Jones was his union steward. (*Id.* ¶¶ 7-10.) The collective bargaining agreement between the Union and Tootsie Roll ("CBA") prohibited discrimination on the basis of race or national origin and required compliance with the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, with respect to accommodations for disabled employees. (Ex. 6 to Pl.'s Stmt. of Undisputed Facts, Dkt. No. 145.)

Nehan had back surgery in 2003 and then suffered a work-related injury in 2009 that required him to take a leave of absence. (D. Resp. ¶ 19, Dkt. No. 181.) He returned to work in October 2009 after a doctor granted him a release for full duty. (*Id.* ¶ 21.) When a Tootsie Roll employee's medical condition required restriction of his physical activity, company policy did not permit him to work in the shipping and receiving department and instead required that he be transferred to a restricted duty department. (Pl.'s Resp. to Defs.' Stmt. of Undisputed Facts ("P. Resp.") ¶ 22, Dkt. No. 207.)

On June 4, 2010, Nehan was working an overtime shift and using a forklift when the shift supervisor, John Grosse, told Nehan that he wanted him to give up the forklift for another employee who was coming in to work 45 minutes later. (D. Resp. ¶¶ 17, 39, Dkt. No. 181.) Shortly thereafter, Grosse returned to Nehan along with Ed Weber, who was the shipping and receiving department manager and Grosse's superior. (*Id.* ¶¶ 11, 12, 40.) Weber told Nehan, "we're going to need your forklift." (*Id.* ¶ 40.) Weber also told Nehan that when Grosse assigned

him to work in an area known as the "picking area," he was not to use a forklift. (*Id*.) Nehan told Weber that he needed the forklift for his medical restrictions. (*Id*.) Nehan's inability to use a forklift left him to use another piece of equipment known as a "walkie," which required him to stand rather than sit. (*Id.* ¶ 36.) Nehan believed that the "walkie" stressed his back more than the forklift because operating it required more bending. (*Id*.) Nehan saw Jones in the area, told him that Grosse and Weber were taking his forklift away from him to give to another employee, and asked him to file a grievance on his behalf. (*Id.* ¶ 41.) Another employee later approached Nehan and told him that Grosse wanted him to take Nehan's forklift; Nehan relinquished it. (*Id.* ¶ 42.) Jones did not file a grievance for the incident. (*Id.* ¶ 43.)

In the present action, Nehan asserts claims against Jones and the Union for failing to pursue a grievance for the forklift incident for discriminatory reasons. Count I of his complaint seeks relief from the Union under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(c)(1), for discrimination on the basis of his national origin. Counts II and III allege that the Union and Jones violated 42 U.S.C. § 1981 by refusing to file a grievance against Tootsie Roll because of his race or, alternatively, because of their disinclination to file grievances for racial discrimination or to antagonize the company. And finally, Count IV asserts a claim against the Union under the ADA for refusing to file a grievance due to its discriminatory animus toward the need to accommodate his disability and reluctance to advocate for such accommodations. Jones and the Union seek summary judgment in their favor; Nehan has also filed a motion for summary judgment on all of his claims.[1]

---

[1] Nehan concedes "that there may be problems with plaintiff meeting his burden of proof to establish a prima facie case of disability" and therefore he apparently has abandoned that aspect of his claim. (Pl.'s Reply in Supp. of Summ. J. at 5, Dkt. No. 197.)

**DISCUSSION**

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 888 (7th Cir. 2011). In deciding a summary judgment motion, the Court construes all inferences in favor of the nonmoving party. *Sellers v. Zurich Am. Ins. Co.*, 627 F.3d 627, 631 (7th Cir. 2010).

Defendants contend that as a prerequisite to his Title VII claim against the Union, Nehan must show that Tootsie Roll violated the CBA and that the Union breached its duty of fair representation by letting the breach go unrepaired. Their basis for this contention is the Seventh Circuit's recitation of these elements in *Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 866 (7th Cir. 1997). But the Seventh Circuit has since abandoned the view that to prevail on a Title VII claim against a labor organization a plaintiff must prove a breach of the collective bargaining agreement or the union's duty of fair representation. In *Green v. American Federation of Teachers/Illinois Federation of Teachers Local 604*, 740 F.3d 1104, (7th Cir. 2014), the court held that a Title VII claim against a labor organization does not depend on a showing that either the employer or the union violated any state statute or contract and that no such element should be considered part of a plaintiff's *prima facie* case. *Id.* at 1107. Instead, a union violates Title VII when it refuses to process a plaintiff's grievance because of his race or earlier complaints about race. *Id.* The *Green* court characterized contrary language in *Greenslade* as *dicta*. *Id.*

Defendants argue that *Greenslade's* validity is unaffected by *Green* because the latter opinion did not incorporate language indicating the panel's compliance with Seventh Circuit Rule 40(e). That rule requires any panel opinion that that would overrule a prior decision of that

4

court to be circulated to the full court prior to issuance. Defendants contend that the panel in *Green* did not follow the procedure established by Rule 40(e) and thus its decision cannot limit *Greenslade*. Such arguments are properly addressed to the Court of Appeals, however, and are unpersuasive here. *See Levin v. Madigan*, 41 F. Supp. 3d 701, 704 (N.D. Ill. 2014). As *Green* directs, Nehan's Title VII claims against the Union will be examined in accordance with the standards applicable to non-union defendants.

In the summary judgment context, these standards are well-established. A Title VII plaintiff may survive summary judgment by presenting proof of discrimination using either the direct or indirect method. *Hutt v. AbbVie Products LLC*, 757 F.3d 687, 691 (7th Cir. 2014). Discrimination claims under 42 U.S.C. § 1981 are analyzed under the same framework. *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007).

The direct method of proof includes both evidence explicitly linking an adverse employment decision to a discriminatory motive and circumstantial evidence strong enough to raise an inference of such a motive. *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013). Nehan points to statements by Jones that he claims constitutes direct evidence of discrimination on the basis of his national origin. He alleges that sometime in February 2010, following a discussion of other grievances, Jones told him, "You African, you guys think you are better more than us." (Ex. 1 to Pl.'s Stmt. of Undisputed Facts at 213, Dkt. No. 141.)[2] According to Nehan, in the course of the same conversation, Jones also said to him, "Nehan, I don't want you to count on me filing a grieving [sic] for you." (*Id.* at 214.)

---

[2] At his deposition, Nehan testified that this conversation occurred in May 2010, but he later executed an errata sheet that corrected his testimony and identified February 2010 as the date. This correction has been confirmed by his subsequent pleadings. (Pl.'s Resp. to Defs.' Stmt. of Additional Material Facts ¶ 32, Dkt. No. 199.)

5

Remarks suggesting a decision maker's propensity to take negative action against a plaintiff for a prohibited reason may suffice as direct evidence of discrimination "even if the evidence stops short of a virtual admission of illegality." *Venters v. City of Delphi,* 123 F.3d 956, 973 (7th Cir.1997). Although evidence of discriminatory motive must have some relationship with the decision at issue, the connection need not be as explicit as, for example, a statements by the decision maker that, "I won't hire you because you're a woman." *Id.* at 972-73. The remarks attributed to Jones suffice. Although his alleged comments did not explicitly link an antagonism towards Africans to his refusal to file a grievance on Nehan's behalf, the proximity of the comments directly supports an inference that the two were related. Defendants argue that the February 2010 date of Jones's alleged comments make them too remote in time from Jones's failure to file a grievance to permit an inference that the two events were related. But timing alone cannot be considered a decisive factor in determining whether comments constitute direct evidence of discrimination. *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 528 (7th Cir. 2008).

Citing *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238 (7th Cir. 1997) and *Souter v. International Union, UAW*, 993 F.2d 595 (7th Cir.1993), Defendants also contend that the Union's pursuit of other grievances on Nehan's behalf demonstrates his lack of discriminatory animus against him. That may be the case. However, the resolution of the competing inferences raised by Jones' comments and the Union's actions on other grievances is a matter for the jury to decide, not for the Court to determine on summary judgment. *Venters,* 123 F.3d at 973.

Defendants' motion is accordingly denied as to Count I of Nehan's complaint, which asserts a Title VII claim against the Union for discrimination on the basis of his national origin. Nehan argues that not only should summary judgment be denied to the Union on this count but that it should be granted in his favor. For purposes of his own summary judgment motion,

however, Nehan is not entitled to have inferences drawn in his favor; rather, any inferences must be drawn in the Union's favor. There are competing inferences present here that cannot be resolved in favor of any party at this stage.

While the alleged statements by Jones support an inference of discrimination against Nehan due to his national origin, Nehan cites no comparable direct evidence in support of his claims of racial discrimination. Although Nehan does not explicitly label them as such, his arguments in support of his race discrimination claims are, in part, fairly construed as relying on circumstantial evidence. Nehan correctly asserts that Title VII and § 1981 are violated if a union fails to pursue a member's claims of race discrimination because of an aversion to supporting such claims, even if the union and its representatives have no discriminatory animus themselves. *See Milam v. Dominick's*, No. 03 C 9343, 2007 WL 6969746, at *3 (N.D. Ill. Apr. 16, 2007) (citing *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 669 (1987); *Allensworth v. General Motors Corp.,* 945 F.2d 174, 179 (7th Cir. 1991)).

Before the incident at issue here, the Union filed several grievances on Nehan's behalf. Nehan argues that the Union "had a pattern of not asserting race (or even discrimination)" when it filed grievances for him, "even when [the Union] was well aware of Nehan's complaints of racial discrimination." (Pl.'s Mem. in Supp. of Summ. J. at 20-21, Dkt. No. 138.) In support of this argument, Nehan cites several grievance forms: No. 8493, dated December 3, 2009 (Dkt. No. 146); No. 8553, dated February 25, 2010 (Dkt. No. 147); No. 8554, dated February 28, 2010 (Dkt. No. 148); No. 8565, dated March 26, 2010 (Dkt. No. 149); and No. 8605, dated May 21, 2010 (Dkt. No. 149-1). Nehan contends that the grievance forms themselves indicate the Union's reluctance to pursue racial discrimination claims in that they avoid references to race.

One of the grievance forms, No. 8553, explicitly contradicts Nehan's contention, however. That document alleges that Tootsie Roll violated the CBA by allowing Nehan's supervisor to discriminate by continually forcing "African American" workers to perform a specific unloading task while "Latino American" and "Polish American" workers did not have to perform that duty. Two other grievance forms filed on Nehan's behalf, Nos. 8554 and 8565, charged the company with violations of the CBA, including violations of "Article 25." As noted above, Article 25 of the CBA provides that neither the company nor the Union would discriminate against any individual because of his or her race, color, age, religion, sex, national origin, creed, ancestry, disability, or any other legally protected status.

Of the five grievance forms identified by Nehan as evidence of the Union's purported reluctance to pursue race discrimination claims, one explicitly identifies a complaint that Nehan was an African-American worker disadvantaged in comparison to Latino and Polish workers, while two others charged that the company was violating the CBA's antidiscrimination provision, which included a prohibition of racial discrimination. This evidence is insufficient to raise an inference of the Union's reluctance to pursue discrimination claims. In addition, Nehan has presented no evidence that the description of an employee's complaint on the Union's grievance form limited its pursuit of specific claims, or that he and the Union were precluded from detailing his claims of race discrimination as the investigation of the grievance progressed.

Nehan also argues that the Union's reluctance to pursue race discrimination claims is demonstrated by evidence that the department manager, Ed Weber, disapproved of Union action in his favor. He cites a "Grievance Investigation Form" dated May 27, 2010, on which Weber reacted to grievance No. 8605 arising from Nehan's suspension for refusing to lift a propane tank that he considered to be too heavy. (Dkt. Nos. 149-1, 149-2.) In a handwritten notation of events

related to the grievance, Weber indicated that he had spoken to Jones about the incident. (Dkt. No. 149-2.) He wrote: "Told Roger that he has no restrictions and all drivers would have taken the tank out without an issue. I asked Roger to talk to [Union president] Donald Woods about Beugre. I feel that the union is creating a monster by backing this man. Roger said he will talk to Don Woods." (*Id.*)

Weber's comment does not suggest that he disapproved of Nehan or his grievance because of his race; it instead indicates that Weber rejected Nehan's claim that a problem with his back was a legitimate reason for his refusal to perform an assigned task. Weber's notes do not indicate that he expressed to Jones any disapproval for Union support for race discrimination claims. Nor do the notes or any other evidence presented by Nehan suggest that the Union interpreted Weber's comments in that way or that Weber's remarks chilled the Union's support for Nehan's grievances. Indeed, the Union subsequently filed a later grievance on Nehan's behalf. (No. 8656, August 5, 2010, Dkt. No. 130-6 at 22 of 73.)

The record thus fails to show any reluctance by Defendants to pursue race-based grievances. Nehan's Title VII and § 1981 race discrimination claims for refusal to bring racial grievances are not supported by sufficient circumstantial evidence under the direct method to survive Defendants' summary judgment motion.

Nehan may nonetheless save these claims by presenting evidence under the indirect method of proof detailed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973). In the employment context, the indirect method's framework requires the employee to establish a *prima facie* case of discrimination by demonstrating that (1) he is a member of a protected class; (2) he met his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class received more

favorable treatment. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). If the plaintiff establishes a *prima facie* case, the employer then bears the burden of offering a non-discriminatory reason for the adverse action, and if the employer makes that showing, the burden shifts back to the employee to present evidence demonstrating that the employer's stated reason is a pretext. *Id.*

Courts in this Circuit routinely cite the *McDonnell Douglas* framework in analyzing summary judgment motions in actions against labor organizations. *See Cox v. Bhd. of Locomotive Eng'rs & Trainmen,* 579 F. App'x 505, 508 (7th Cir. 2014). But in such actions, that framework has been applied without reference to the *McDonnell Douglas* "meeting employer's expectations" element of a *prima facie* case, and in cases where the plaintiff's protected class and the defendant's adverse action were not disputed, courts have proceeded directly to the "similarly situated" analysis. *See Humphrey v. United Ass'n of Plumbers & Pipefitters Union, Local 101,* No. 11-CV-716-JPG-SCW, 2012 WL 6209308, at *4 (S.D. Ill. Dec. 13, 2012).

To be similarly situated for purposes of a plaintiff's attempt to establish a *prima facie* case of discrimination, comparators must be directly comparable in all material respects. *Patterson v. Ind. Newspapers, Inc.,* 589 F.3d 357, 365–66 (7th Cir.2009). That inquiry is usually a question for the factfinder, but summary judgment may be appropriate when no reasonable factfinder could find that the plaintiff has met his burden on the issue. *Srail v. Vill. of Lisle,* 588 F.3d 940, 945 (7th Cir. 2009). In the usual case, the plaintiff and his comparators must have been subject to the same decision maker and engaged in similar conduct without differentiating circumstances that would distinguish their conduct or the decision maker's treatment of them. *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012).

Nehan offers as comparators two individuals, George Williams and Theresa Sanchez. He alleges that Williams and Sanchez were employees of Tootsie Roll and members of his same bargaining unit. (P. Resp. ¶ 76, Dkt. No. 207.) He argues that Williams is non-African and therefore outside of his national origin class, and that Sanchez is non-African and non-black, and therefore outside his national origin and race classes. (*Id.*) Nehan asserts that Williams and Sanchez are similarly situated to him because they were subject to the same terms and conditions of employment, and yet he was treated differently from each of them in that they each asserted complaints about their work conditions that the Union decided to pursue through the grievance process. (*Id.*)

But Nehan does not claim that the decisions to pursue grievances on behalf of Williams and Sanchez were made by Jones, the union steward who he identifies as responsible for the inaction with regard to his own case. Indeed, Williams's and Sanchez's grievance forms both suggest that different union stewards initiated their grievances—the Williams grievance form indicates that it was submitted by Donald Woods "for Theresa Sanchez, Shop Steward." (Dkt. No. 151-1 at 2.) The Sanchez grievance form indicates that it was submitted by Donald Woods for "James Sterling, Steward." (Dkt. No. 151-2 at 2.) Nehan's failure to offer any evidence that his comparators were subjected to action (or inaction) by Jones, the decision maker allegedly responsible for the inaction of which he complains, defeats the claim that they are similarly situated to him and accordingly defeats his attempt to establish a *prima facie* case of discrimination through the indirect proof method.

Even if Nehan had established the necessary *prima facie* case, Defendants have presented evidence that would meet their burden of explaining their inaction. Jones testified at his deposition that he did not file a grievance on Nehan's behalf because he did not believe the CBA

had been violated. (Ex. 3 to D. Resp. at 133, Dkt. No. 185.) He believed that Nehan's supervisors had the right to assign tasks and equipment as they saw fit, and he did not believe that Nehan was entitled to override his supervisors' directives for medical reasons because his presence in the shipping and receiving department indicated that he was working without medical restrictions. (*Id.* at 134-36.)

Citing the Seventh Circuit's aforementioned opinion in *Green v. American Federation of Teachers*, Nehan argues that just as a CBA violation is not a prerequisite for a discrimination claim against a union, Jones's belief that there was no violation cannot shield Defendants from liability. But if Defendants offer a non-discriminatory reason for declining to pursue a grievance on Nehan's behalf and their showing stands unrebutted, they are entitled to summary judgment on claims for which Nehan relies upon the indirect method of proof. *Stone v. City of Indianapolis Pub. Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002). The plaintiff's rebuttal must show that the defendant's stated reasons were insincere, not merely that they were baseless. *Harper v. Fulton Cnty., Ill.*, 748 F.3d 761, 768 (7th Cir. 2014). Here, Defendants assert that Jones did not file a grievance for violation of the CBA because he did not believe that the actions of which Nehan complained constituted a violation. Nehan offers no evidence to rebut this assertion. This failure would defeat his race discrimination claims even if he had established a *prima facie* case under the *McDonnell Douglas* burden shifting approach.

## CONCLUSION

As discussed above, Nehan has presented sufficient direct evidence of discrimination based on his national origin to survive a summary judgment motion on that claim but not to prevail on one of his own. Thus, both Defendants' and Nehan's motions for summary judgment on Count I of the Second Amended Complaint are denied. However, as Nehan has failed to establish a *prima facie* case of discrimination on the basis of either his race or his disability, Defendants' motion for summary judgment is granted as to Counts II, III, and IV, and Nehan's cross-motion on those counts must be denied.

ENTERED:

Dated:  September 29, 2015

_____

Andrea R. Wood
United States District Judge